IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| **Jonathan Lewis,** | ) | Case No.: 4:23-cv-01720-JD |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **PLAINTIFF'S SUPPLEMENTAL** |
| | ) | **RESPONSE IN OPPOSITION TO** |
| **Circle K Stores, Inc., and John Doe,** | ) | **SUMMARY JUDGMENT** |
| | ) | |
| Defendants. | ) | |

Plaintiff Jonathan Lewis, by and through his undersigned counsel, hereby files this Supplemental Response in Opposition to Defendant's Motion for Summary Judgment pursuant to the Court's docket text order. *See* ECF No. 49.

**FACTS**

Plaintiff incorporates the facts set forth in its memorandum in opposition to summary judgment, ECF No. 43. Plaintiff sets forth the additional facts bearing on this supplemental brief.

While exiting Defendant's store, Mr. Lewis stepped on a wet painted parking lot stripe covered in a cleaning agent. Stepping on the slick parking lot stripe caused Plaintiff's foot to "slip and roll" and tear his patellar tendon in his right knee from trying to catch himself to prevent from falling. After attempting to catch himself, his leg buckled, he heard pops in his knee and then fell to the ground. Lewis Dep. 30:14-16; 44:1-5; 44:17-22; 45:1-15; 46:18-21.[1] The morning prior to Mr. Lewis's fall, he took his dog for a walk and a week prior to this incident, he was playing basketball. Lewis Dep. 30:10-14; 31:14-16; 44:1-5; 81:10-25. Dr. Nathaniel Evans[2] and Dr. Joseph

---

[1] Plaintiff's deposition transcript is attached hereto as **Exhibit A.**
[2] Dr. Evans' deposition transcript is attached hereto as **Exhibit B**.

Calandra[3] agree that the usual cause of a patellar tendon rupture is the forced extension of the leg against a fixed flexion of the knee. Evans Dep.12:8-16; Calandra Dep.26:18-25; 27:1-2.

As a cursory matter, Defendant's initial argument for summary judgement was based on whether medical testimony was necessary to determine "the exact mechanism of the fall," a slip or a trip," and that there was no evidence Mr. Lewis slipped. *See* ECF No. 39 at p.10-11. Defendant <u>conceded</u> Mr. Lewis ruptured his patellar tendon and that he fell. Defendant was arguing the nature of how Mr. Lewis injured himself, a trip vs. slip, not the incident that ruptured his patellar tendon. This was an attack on whether there was a dangerous condition on Defendant's property. Now, Defendant has pivoted from a mechanism argument to a different argument all together, one of causation, that expert testimony is needed to support whether a slip can cause a patellar tendon rupture. Such expert testimony is not required in this case, and if it is, Mr. Lewis's treating surgeon testified to this exact point; a slip is a cause of a patellar tendon rupture.

## **LEGAL STANDARD**

"[W]hile the question of whether evidence is sufficient to survive summary judgment is generally a matter of federal procedural law, 'the "expert testimony" rule' may be 'so closely interrelated with the substantive cause of action … that federal courts sitting in diversity cases should apply the state rule in order to fully realize state substantive policy.'" *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prod. Liab. Litg.*, 227 F. Supp. 3d 452, 468 (D.S.C. 2017). Lay testimony regarding causation of a permanent injury presents a question for the jury. *See Joye v. Wiggins,* 263 S.C. 334, 337–38 (1974); Where a plaintiff testifies about their ongoing medical problems, the existence of a permanent injury is a question for the jury. *See Vaughn v. City of Anderson*, 300 S.C. 55, 60 (Ct. App. 1989).

---

[3] Dr. Calandra's deposition transcript is attached hereto as **Exhibit C**.

**ARGUMENT**

I.   **EXPERT MEDICAL TESTIMONY IS NOT REQUIRED TO ESTABLISH CAUSATION FOR MR. LEWIS'S ACUTE PATELLAR TENDON RUPTURE, AND EVEN IF THIS COURT FINDS EXPERT MEDICAL TESTIMONY TO BE REQUIRED, THERE IS SUFFICIENT TESTIMONY TO CREATE A GENUINE ISSUE OF MATERIAL FACT.**

   a. **Expert medical testimony is not required to establish causation for Mr. Lewis's acute patellar tendon rupture.**

Expert testimony is not required to prove causation when there is an immediate onset of symptoms that naturally follow from an accident or lack of any other possible cause. *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prods. Liab. Litig.*, 227 F. Supp. 3d 452, 477 (D.S.C. 2017); *see also Galloway v. Horne Concrete Const.*, 524 Fed. Appx. 865, 872 (4th Cir. 2013) ("a plaintiff was not required to prove causation by expert evidence when she drank from a spigot and developed chemical burns in her mouth immediately thereafter"); *Dodge–Farrar v. Am. Cleaning Servs. Co.*, 54 P.3d 954, 959 (Idaho Ct. App. 2002) ("[T]he causal relationship between [plaintiff's] fall and her immediate symptoms in the ankle, knee and back (the pain, swelling, and the inability to sit, stand or walk without assistance) is within the usual and ordinary experience of the average person."); *Gambrell v. Burleson*, 252 S.C. 98, 105-6 (1969) (If "a plaintiff in good health prior to an injury begins to complain on the day of the injury with what he claims to be a condition resulting from the injury, this fact alone may be sufficient evidence of causation.").

In *Miller*, the plaintiff purchased a Mountain Dew, consumed two or three sips of the drink and immediately thereafter noticed the drink had a vile smell and taste. *Miller v. Atl. Bottling Corp.*, 259 S.C. 278, 280 (1972). Prior to drinking the Mountain Dew, Plaintiff was in good health, but she immediately became sick upon drinking the beverage. *Id.* at 280. Although the plaintiff's treating physician did not opine on causation, the court held expert medical testimony was not

required and stated, "a reasonable person would necessarily require medical testimony in order to determine that the drinking and discovery of a foreign substance of the present nature in a bottled drink most probably caused the nausea and vomiting which immediately followed." *Id.* at 281–82.

Instead, expert testimony is required when the causal relationship is not within the ken of a reasonable juror—for example, to prove the effects of allegedly toxic chemicals on the human body, medical malpractice cases, and the causation of dormant progressive diseases. *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prods. Liab. Litig.*, 227 F. Supp. 3d 452, 478 (D.S.C. 2017). Consider *Goewey*, where the plaintiff's theory of liability was an acute toxic exposure to the organo-phosphate known as tri-ortho-cresyl phosphate, a compound which produces a delayed toxic reaction; the court granted the defendant's motion for summary judgment because the plaintiff's experts could not causally relate the injuries. *Goewey v. United States*, 886 F. Supp. 1268, 1282-83 (D.S.C. 1995). Likewise, in *Gambrell*, the plaintiff suffered injuries from an automobile collision and claimed the collision aggravated or accelerated his preexisting cancer. *Gambrell*, 252 S.C. at 100. Because no expert testimony linked the injuries from the collision to aggravating or accelerating his cancer, the court held it was error to permit that testimony to go to the jury. *Id.* at 107-08. Lastly, in *Ellis*, the estate of the deceased brought a medical malpractice action against the Veterans Administration Hospital for permitting the deceased's father, Mr. Ellis, a psychiatric patient, to leave the facility which resulted in Mr. Ellis killing the deceased. *Ellis v. United States*, 484 F. Supp. 5-6 (D.S.C. 1978). The record established Mr. Ellis was not a danger to himself or others at the time he left the facility and plaintiff's medical experts admitted the Veterans Administration Hospital did not violate generally accepted practices by granting Mr. Ellis a custody pass. *Id.* at 9-10. Thus, the court entered judgment for the defendant.

Here, like in *Miller*, expert medical testimony is not necessary to establish causation. This case does not involve personal injury claims related to medical malpractice, toxic chemical exposure, or preexisting cancer. Rather, like *Miller*, Mr. Lewis suffered an acute injury immediately following a slip. Nothing indicates Mr. Lewis was suffering from a patellar tear before the slip—on the morning of the incident, Mr. Lewis took his dog for a walk and a week prior to this incident, he was playing basketball. Lewis Dep. 30:10-14; 31:14-16; 44:1-5; 81:10-25. In support of its contention Plaintiff was "unhealthy" prior to his slip and fall, Defendant misstates the record regarding Mr. Lewis's medical history. Mr. Lewis did NOT have bilateral patellar tendon repairs in 2020. Mr. Lewis did treat with Dr. Butler in 2020 for knee pain and swelling, but for the LEFT knee, not the right. While exiting Defendant's store, Mr. Lewis stepped on a wet painted parking lot stripe which caused him to slip, tear his patellar tendon in his right knee from trying to brace himself from the slip, and then fell. Lewis Dep. 30:14-16; 45:1-15. Mr. Lewis testified his right foot slipped and rolled, his knee buckled, he heard a pop and then immediately suffered from excruciating pain in his right leg. Lewis Dep. 30:14-16; 53:25. Mr. Lewis explained his foot was visibly swollen immediately after the fall and on a scale of one to ten, he rated his pain either a nine or a ten, making him unable to walk or move his leg without assistance. Lewis Depo. 53:25; 54:1-5; 54:21-25; 55:1; 70:1-10. Defendant's own employee, Mr. Waples, who witnessed Mr. Lewis slip and fall, stated Mr. Lewis slipped on the painted parking lot stripe. Waples Dep. 68:10-13; 69:9-17.[4] Mr. Waples knew this because he could see Mr. Lewis's visible slip mark on the painted line. Waples Dep. 68:10-13.

Therefore, when viewed in the light most favorable to Plaintiff, a reasonable jury could find based upon the testimony of Mr. Lewis and other lay persons that Mr. Lewis's patellar tendon

---

[4] Mr. Waples's deposition transcript is attached hereto as **Exhibit D.**

rupture was most likely caused by slipping on the wet painted stripe due to Mr. Lewis's daily activities prior to his slip, the immediate pain Mr. Lewis felt in his leg after the slip, his immediately noticeable visible injury and inability to walk or move his leg after the incident.

> **b. Even if this Court finds expert medical testimony is required to establish causation, Dr. Evan's testimony links Mr. Lewis's slip to an acute patellar tendon rupture.**

Dr. Evans testified that an unexpected slip is a common cause of a ruptured patellar tendon. Evans Dep. 12:8-20. Defendant's own expert, Dr. Calandra, testified the usual cause of a healthy ruptured patellar tendon is a forced extension of the knee against a fixed flexion of the knee. Calandra Dep. 26:18-25; 27:1-2. This usual cause is the exact mechanism of how this incident occurred. Mr. Lewis's foot slipped and rolled on the chemical covered wet painted stripe, causing a forced extension against a fixed flexion. While trying to brace himself, Mr. Lewis heard pops in his knee and fell to the ground in extreme pain. Lewis Depo. 30:14-16; 45:1-15.

When Mr. Lewis arrived to his first appointment at Dr. Evans' office, a history of present illness was completed which stated that he had an injury at a local gas station, slipped, had right knee pain and felt a pop in his leg. Evans Dep. 9:1-8. Information contained within the history of present illness is part of the information needed to make an appropriate diagnosis of the injury. Evans Dep. 8:1-25. Dr. Evans diagnosed Mr. Lewis with a patellar tendon rupture and testified that a patellar tendon rupture is almost exclusively an acute injury. Evans Dep. 11:10-25. When asked whether Mr. Lewis's injury was an acute event, Mr. Evans testified as follows:

> Q: Does the patellar tendon, for it to tear or rupture, does it require a pretty significant amount of –
> A: Yeah, and I think that's what I'm indicating there is, that it would take a little – a decent bit of force to cause it to rupture.
> Q: Based on what we just talked about, about what would potentially cause a patellar tendon to rupture and the history or present illness given by Mr. Lewis, do you have an opinion as to whether or not Mr. Lewis' patellar tendon was an acute event?

> A: I think it was, yes.
> Q: Is hearing a pop when someone ruptures their patellar tendon, is that pretty common?
> A: Yeah, I think people feel some sort of sensation that something is torn or ruptured or something is not quite right.
> Q: Is there anything that you see in Mr. Lewis' records or based on your history or training or education and your experiences, does this seem to be a situation where Mr. Lewis' patellar tendon just spontaneously gave out?
> A: No.

Evans Dep. 13:8-25; 14:1-8. Dr. Evans testified that patellar tendons do not tend to rupture spontaneously. Evans Dep. 38:6-16. When further asked about the effects of a ruptured patellar tendon, Dr. Evans explained a person is unable to do much of anything and cannot bend the knee to get up or down. Evans Dep. 15:24-25; 16:1-9. As to the mechanism of the fall, Dr. Evans stated:

> Q: And would a person who maybe unexpectedly slips or their foot turns one way or their knee turns another way, is that a common cause of a ruptured patellar tendon?
>     Mr. Holt: Objection, leading. Go ahead, Doctor.
> A: Yes, that would be a common mechanism, something where your knee bends quickly or unexpectedly.

Evans Dep. 12:8-16. Like Dr. Calandra, Dr. Evans testified the common mechanism or usual cause of a patellar tendon rupture is a forced extension of the knee against a fixed flexion of the knee. Evans Dep. 12:8-16; Calandra Dep. 26:18-25; 27:1-2. After Mr. Lewis's foot slipped and rolled on the wet chemical covered painted parking lot stripe, he braced his leg to stop himself from falling resulting in his patellar tendon rupturing. This was an acute event and falls squarely within both expert's common mechanism or usual cause of a patellar tendon injury.

When viewed in the light most favorable to Plaintiff, the evidence in this case creates a genuine issue of material fact as to the causation of Mr. Lewis's patellar tendon to rupture. Thus, Defendant's Motion for Summary Judgement must be denied because Defendant is not entitled to judgment as a matter of law and questions of material facts exist.

**MORGAN & MORGAN, PA**

s/Joseph S. Sandefur
Joseph S. Sandefur, Esquire – Federal Bar # 10238
11915 Plaza Drive, Suite 301
Murrells Inlet, South Carolina 29576
Phone: (843) 973-5196   Fax: (843) 973-5221
jsandefur@forthepeople.com
ATTORNEYS FOR PLAINTIFF

July 7, 2025
Murrells Inlet, South Carolina