IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Jonathan Lewis, | ) | Case No.: 4:23-cv-01720-JD |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| Circle K Stores, Inc., and John Doe, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This is a slip-and-fall case, and before the Court are several motions by the parties. Defendant Circle K Stores, Inc. ("Defendant" or "Circle K"),[1] moves for summary judgment, asserting that no genuine issues of material fact exist that would preclude judgment in its favor on the issues of breach of duty of care, proximate cause, and punitive damages. (DE 39.) Plaintiff Jonathan Lewis ("Plaintiff" or "Lewis") opposes the motion, arguing that material facts remain in dispute. (DE 43.) Circle K has filed a reply in support of its motion. (DE 46.)

Lewis also moves for an order imposing sanctions against Circle K for the alleged intentional destruction of relevant and material evidence. (DE 40.) Circle K opposes the motion (DE 42), and Lewis has replied. (DE 45.)

Additionally, Lewis moves to exclude the testimony of Circle K's designated expert witnesses—Dr. Joseph Calandra, M.D., and Brandon Wiggins, P.E.—who are

---

[1]        Although a fictitious employee also is named as a defendant in this case (*see* Compl. ¶¶ 10–11, DE 1-1 at 4), in this Order, the Court refers to Circle K in the singular.

expected to offer opinions regarding the cause of Lewis's patellar tendon rupture and the adequacy of Circle K's premises maintenance, respectively. (DE 41.) Circle K opposes this motion as well (DE 44), and Lewis has filed a reply. (DE 47.)

For the reasons set forth below, Defendant Circle K's Motion for Summary Judgment (DE 39) is GRANTED; Plaintiff Jonathan Lewis's Motion for Spoliation Sanctions (DE 40) is DENIED; and Plaintiff's Motion to Exclude Defendant's Experts, Dr. Joseph Calandra and Brandon Wiggins (DE 41), is DENIED.

## I. BACKGROUND

### A. Factual Background

Circle K owns the property located at 1695 US-501, Myrtle Beach, South Carolina, where it operates a convenience store that also sells gasoline. On October 19, 2022, Lewis arrived at the store. (Compl. ¶ 8, DE 1-1 at 4.) After parking his vehicle at a gas pump, Lewis entered the store to buy fuel. (*Id.* ¶ 9, DE 1-1 at 4.) While Lewis was inside, Circle K's employee, Nolan Waples ("Mr. Waples"), cleaned the store entrance area, including the parking lot's painted stripes, using water and a concrete cleaner. (*Id.* ¶ 10, DE 1-1 at 4.)

Lewis contends that upon exiting the store, he slipped and fell on the wet surface, resulting in an injury. (*Id.* ¶ 11, DE 1-1 at 4.) Circle K admits that Lewis was acting reasonably while walking in and out of the store and that Lewis did nothing improper. (Montaldano Dep. 106:01–07, DE 43-4 at 8.)

A security camera positioned at the store entrance recorded Lewis's exit and the later incident. The footage, which was preserved by Circle K, shows Lewis and other customers leaving the store while Mr. Waples—a store employee—was cleaning

the entryway with CAF concrete cleaner. With no visual obstruction, Lewis can be seen walking over the cleaned area before falling, although the video's frame rate only captures the moments immediately before and after the fall. Notably, Mr. Waples did not witness the fall. (Waples Dep. 76:11–12, DE 39-1 at 1.)

Lewis alleges he suffered serious injuries, including a patellar-tendon rupture in his right knee. (Lewis Dep. 68:13–19, DE 39-2 at 1.) He claims that Circle K created a hazardous condition and failed to warn him, asserting negligence as his sole cause of action. (Compl. ¶¶ 10–18, DE 1-1 at 5–7.)

Lewis filed this lawsuit on November 1, 2022, seeking actual and punitive damages. (*Id.* ¶ 18, DE 1-1 at 7.) Circle K has moved for summary judgment, seeking dismissal of Lewis's claims. (DE 39.)

## B. Circle K's Relevant Expert Opinions

The parties have designated multiple expert witnesses to offer opinions on various aspects of the case. Pertinent here are two of Circle K's experts: Dr. Joseph Calandra and Brandon Wiggins.

### 1. Dr. Joseph Calandra

Dr. Joseph Calandra ("Dr. Calandra"), offered five key opinions about Lewis's ruptured patellar tendon:

- Lewis had preexisting risk factors, such as patellar-tendon injuries, an athletic history, smoking, and weight issues (*See* Calandra Dep. 23:8–14, DE 41-1);

- these factors "may have contributed" to a chronically weakened tendon (*id.* at 23:17–22, DE 41-1 at 3);

- it is "possible" the tendon ruptured first, causing the fall (*id.* at 26:1–5, DE 41-1 at 4);

- Lewis likely did not have a normal, healthy tendon, which contributed to the injury (*id.* at 26:7–14, DE 41-1 at 4); and

- the common rupture mechanism involves "fixed flexion" against "forced extension" (*id.* at 26:18–27:2, DE 41-1 at 4–5).

According to Lewis, Dr. Calandra's opinions were based on his review of medical records and video evidence, his experience as an orthopedic surgeon, and unspecified general medical knowledge. But Lewis points to Dr. Calandra's admissions that he relied on no particular studies, publications, or controlled testing. (*See* DE 41 at 5–6 (collecting quotes from Calandra's deposition).) Lewis asserts Dr. Calandra's method was largely anecdotal and developed specifically for this litigation (*see id.* at 6 (citing Calandra Dep. 75:19–76:3, DE 41-1 at 25–26)), with no calculated error rate or peer-reviewed validation (*see id.* at 5–6 (citing Calandra Dep. 77:12–25, 78:13–18)). Thus, Lewis contends, the testimony should be excluded.

### 2.    Brandon Wiggins, P.E.

Brandon Wiggins, P.E. ("Mr. Wiggins"), provided opinions on the condition of the walking surface, stating that, based on documents reviewed, no evidence established the surface was non-slip-resistant, and thus no code violation could reasonably be concluded to have occurred. (Wiggins Dep. at 36:15–22, DE 41-2.) However, Lewis contends Mr. Wiggins did not independently test or inspect the site, nor did he evaluate or account for the effects of cleaning products used then. (DE 41 at 8–9; *see* Wiggins Dep. 45:9–12, DE 41-2 at 4; Wiggins Dep. 64:14–19, DE 41-2 at 7; Wiggins Dep. 80:25–82:1, DE 41-2 at 14.)) Lewis questions Mr. Wiggins's opinions because they present analytical gaps by drawing conclusions from limited data and effectively inviting the jury to adopt his assessment of the weight of evidence without

a sufficient expert foundation. (DE 41 at 9 (citing Wiggins Dep. 69:24–72:16, DE 41-2 at 8–11); *see* Wiggins Dep. 87:19–88:6, DE 41-2 at 15–16.) Accordingly, Lewis argues that this testimony should likewise be excluded.

## C. Circle K's Alleged Spoliation

Lewis alleges that after the above-noted October 19, 2022, accident, Circle K had a duty to preserve the parking lot paint stripe where the fall occurred so Lewis's expert could inspect it and conduct coefficient-of-friction testing. (DE 40 at 1–3.) Lewis's counsel informed Circle K of the need for site inspection well in advance, and Circle K knew of its preservation obligations no later than January 18, 2023, when it appeared in the lawsuit. (*Id.* at 2–3.)

In any event, Circle K repainted the parking lot stripes in September 2023, one month before Lewis's scheduled site inspection, effectively altering the evidence. (DE 40 at 4; Montaldano Dep. 125:23–126:2, DE 40-2 at 2–3; *see* DE 40-3.) Lewis's expert, Dr. Bryan Durig, only discovered the repainting during the October 16, 2023, site visit by comparing prior photos to the current condition. (DE 40 at 3–4.) Circle K admitted that the repainting occurred, and the record includes an invoice confirming the work. (DE 40 at 4, DE 40-3 (invoice of repainting).)

Lewis argues that the repainting deprived him of the ability to test the coefficient of friction on the original surface, which was central to proving that the condition of the paint stripe created an unreasonably dangerous hazard. (DE 40 at 5–6.) Circle K's expert, Mr. Wiggins, conceded that testing after repainting would yield "questionable" results because it would not reflect the original surface conditions.

(Wiggins Dep. 46:13–19, DE 40-4; *see* DE 40 at 6.) Lewis contends that Circle K has now turned this evidentiary gap to its advantage, using the lack of coefficient of friction data as a defense in its expert's report and motion for summary judgment. (DE 40 at 6–7.)

## II.  LEGAL STANDARDS

### A.  Expert Testimony Under Rule 702, Fed. R. Evid.

District courts "must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharm. Inc.*, 509 U.S. 579, 589 (1993). Rule 702 of the Federal Rules of Evidence was amended in response to *Daubert* and its progeny to provide:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Rule 702, Fed. R. Evid. The proponent of an expert witness's testimony bears the burden of proving that such testimony meets the requirements of Rule 702 by a preponderance of evidence. *See Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001) (citing *Daubert*, 509 U.S. at 592 n. 10). As the text of the rule suggests, district courts have a "special obligation" as gatekeepers. *Kumho Tire Co. v.*

*Carmichael*, 526 U.S. 137, 147 (1999). This means that regardless of the content of the expert testimony, "a district court must ensure that the expert is qualified and that the expert's testimony is both relevant and reliable." *United States v. Smith*, 919 F.3d 825, 835 (4th Cir. 2019).

Beginning with qualifications, "[t]he test is whether, under the totality of the circumstances, the witness can be said to be qualified as an expert in a particular field through any one or more of the five bases enumerated in Rule 702—knowledge, skill, experience, training, or education." *Santos v. Posadas De Puerto Rico Assocs., Inc.*, 452 F.3d 59, 64 (1st Cir. 2006).

Turning to methodology, the court must consider "whether the reasoning or methodology underlying the testimony" is reliable. *Daubert*, 509 U.S at 592–93. Certain nonexclusive factors address the reliability of a particular theory or technique, namely, whether the theory or technique:

(1)    can be and has been tested;

(2)    has been subjected to peer review and publication;

(3)    has a known or potential rate of error; and

(4)    has attained general acceptance in the pertinent scientific community.

*See id.* at 593–94. Of course, given the district court's role regarding all expert testimony, "some of *Daubert*'s questions can help to evaluate the reliability even of experience-based testimony." *Kumho Tire Co.*, 526 U.S. at 151. But in any given case, which of these factors are applicable "depends upon the particular circumstances of the particular case at issue." *Id.* at 150. And importantly, the focus "must be solely

on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595.

Finally, relevance is determined by ascertaining whether the testimony is sufficiently tied to the facts of the case such that it will aid the jury in resolving a factual dispute. *See id.* at 593; *see also* Rule 402, Fed. R. Evid.

However, "the trial court's role as a gatekeeper is not intended to serve as a replacement for the adversary system, and consequently, the rejection of expert testimony is the exception rather than the rule." *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prod. Liab. Litig. (No II) MDL 2502*, 892 F.3d 624, 631 (4th Cir. 2018) (alteration omitted) (quoting another source).

### B. Summary Judgment Under Rule 56, Fed. R. Civ. P.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Under Rule 56(c), summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* at 322. "A fact is 'material' if proof of its existence or non-existence would affect disposition of the case under applicable law. An issue of material fact is 'genuine' if the evidence offered is such that a

8

reasonable jury might return a verdict for the non-movant." *Wai Man Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020) (citation omitted). If the burden of proof at trial would be on the nonmoving party "a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" *Celotex Corp.*, 477 U.S. at 324. "[T]he burden on the moving party may be discharged by 'showing'— that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. "If the moving party has not fully discharged this initial burden of production, its motion for summary judgment must be denied[] . . . ." *Id.* at 332 (Brennan, J., dissenting).

Accordingly, once the movant has made this threshold demonstration, to survive the motion for summary judgment, under Rule 56(e), the nonmoving party must "go beyond the pleadings and by h[is] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324 (citation omitted). Under this standard, "the mere existence of a scintilla of evidence" in favor of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion." *Wai Man Tom*, 980 F.3d at 1037.

"Summary judgment cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits." *Jacobs v. N.C. Admin. Office*

*of the Cts*, 780 F.3d 562, 568 (4th Cir. 2015) (quoting another source). "The court may grant summary judgment only if it concludes that the evidence could not permit a reasonable jury to return a favorable verdict." *Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 761 (4th Cir. 2021). "Therefore, courts must view the evidence in the light most favorable to the nonmoving party and refrain from weighing the evidence or making credibility determinations." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018) (internal quotation marks omitted and alterations adopted). A court improperly weighs the evidence if it fails to credit evidence that contradicts its factual conclusions or fails to draw reasonable inferences in the light most favorable to the nonmoving party. *See id.* at 659–60.

### C. Spoliation Sanctions Under Rule 37, Fed. R. Civ. P.

"Spoliation refers to the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001). "A party may be sanctioned for spoliation if the party (1) had a duty to preserve material evidence, and (2) willfully engaged in conduct resulting in the loss or destruction of that evidence, (3) at a time when the party knew, or should have known, that the evidence was or could be relevant in litigation." *Blue Sky Travel & Tours, LLC v. Al Tayyar*, 606 F. App'x 689, 697–98 (4th Cir. 2015) (citing *Turner v. United States,* 736 F.3d 274, 282 (4th Cir. 2013)).

The Federal Rules of Civil Procedure provide a source of authority for the district court to sanction a party for the spoliation of evidence. *See e.g.*, Rule 37, Fed.

10

R. Civ. District courts also have "[t]he right to impose sanctions for spoliation aris[ing] from a court's inherent power to control the judicial process and litigation, but the power is limited to that necessary to redress conduct 'which abuses the judicial process.'" *Silvestri*, 271 F.3d at 590 (citations omitted) (quoting *Chambers v. NASCO, Inc.,* 501 U.S. 32, 45–46 (1991)). Thus, "[w]hile a district court has broad discretion in choosing an appropriate sanction for spoliation, 'the applicable sanction should be molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine.'" *Id.* (quoting *West v. Goodyear Tire & Rubber Co.,* 167 F.3d 776, 779 (2d Cir. 1999)).

"The range of options available to a district court includes dismissal, but such a harsh sanction should be imposed only if 'a lesser sanction will [not] perform the necessary function.'" *King v. Am. Power Conversion Corp.*, 181 F. App'x 373, 376 (4th Cir. 2006) (quoting *Silvestri,* 271 F.3d at 590). "Because of the extreme nature of dismissal as a sanction for spoliation, it is usually appropriate 'only in circumstances of bad faith or other 'like action.'" *Id.* (quoting *Silvestri,* 271 F.3d at 593). Thus, the Fourth Circuit has prescribed the following approach for district courts considering dismissal as a sanction for a given instance of spoliation: "dismissal is appropriate only if 'either (1) . . . the spoliator's conduct was so egregious as to amount to a forfeiture of his claim, or (2) . . . the effect of the spoliator's conduct was so prejudicial that it substantially denied the defendant the ability to defend the claim.'" *Id.* (citing *Silvestri,* 271 F.3d at 593).

## III.  DISCUSSION

11

### A.   Exclusion of Circle K's Experts Dr. Calandra and Mr. Wiggins

#### 1.   Dr. Calandra

Lewis moves to exclude the testimony of Dr. Calandra, arguing that his opinions fail to meet the admissibility standards under *Daubert* and Federal Rule of Evidence 702. Lewis contends that Dr. Calandra's opinions lack a reliable scientific foundation and are unsupported by any identifiable or testable methodology. Lewis does not challenge Dr. Calandra's qualifications—and rightly so. Dr. Calandra is a board-certified orthopedic surgeon and has served as a clinical professor at the Medical University of South Carolina.[2] (DE 44 at 3.)

Nevertheless, as for reliability, Lewis asserts that Dr. Calandra's method— which consisted of reviewing medical records, examining video footage, and drafting a report—is insufficient under *Daubert*. (Calandra Dep. 76:24–77:5, DE 41-1 at 26–27; *id.* 89:24–90:3, DE 41-1 at 30–31.) This Court disagrees.

As stated in *Daubert*, district courts consider several nonexclusive factors in determining whether an expert's testimony is reliable: (1) whether the theory or technique can be and has been tested; (2) whether it has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) its general acceptance in the relevant scientific community. *Daubert*, 509 U.S. at 593–94. But as the Supreme Court explained in *Kumho Tire Co.*, these factors are not rigid or exhaustive;

---

[2]     Although Circle K has not submitted Dr. Calandra's curriculum vitae or directed the Court to specific evidence in the record establishing his qualifications, the Court notes that Lewis has not challenged or opposed Circle K's representation of Dr. Calandra's credentials. Accordingly, the Court declines to inquire further into this matter.

rather, the inquiry is a flexible one that must be tailored to the "particular circumstances of the particular case." 526 U.S. at 150.

The Court's reliability assessment focuses "solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595. Expert testimony is scientifically valid if it is "ground[ed] in the methods and procedures of science" and supported by "appropriate validation." *Id.* at 590; *see also United States v. Dorsey*, 45 F.3d 809, 813 (4th Cir. 1995). Here, Dr. Calandra's methodology—reviewing medical records, deposition testimony, and video surveillance—adheres to common and accepted practices in the medical field.

Dr. Calandra opined on several points, including that:

- Lewis had preexisting risk factors, such as patellar-tendon injuries, an athletic history, smoking, and weight issues (*See* Calandra Dep. 23:8–14, DE 41-1);

- these factors "may have contributed" to a chronically weakened tendon (*id.* at 23:17–22, DE 41-1 at 3);

- it is "possible" the tendon ruptured first, causing the fall (*id.* at 26:1–5, DE 41-1 at 4);

- Lewis likely did not have a normal, healthy tendon, which contributed to the injury (*id.* at 26:7–14, DE 41-1 at 4); and

- the common rupture mechanism involves "fixed flexion" against "forced extension" (*id.* at 26:18–27:2, DE 41-1 at 4–5).

Dr. Calandra ultimately concluded, to a reasonable degree of medical certainty, that either (1) Lewis's patellar tendon ruptured, causing him to fall, or (2) Lewis stubbed his toe, began to fall, and that action caused the rupture. (Calandra Dep. 44:19–45:11, DE 39-27 at 1.) These opinions are valid, relevant, and connected to the medical facts of the case. *See Sardis v. Overhead Door Corp.*, 10 F.4th 268, 281 (4th Cir. 2021).

While Lewis argues that Dr. Calandra's opinions are flawed because they cannot be falsified or tested and are not supported by published research or peer-reviewed articles (DE 41 at 5; *see* Calandra Dep. 47:16–21, DE 41-1 at 9; Calandra Dep. 50:25–51:12, DE 41-1 at 12–13), these categorical assertions misunderstand the flexibility of the *Daubert* framework. As the Fourth Circuit explained in *Sardis*, whether a theory can be tested does not necessarily apply to all experts or all cases. *Sardis*, 10 F.4th at 281. The Fourth Circuit has also emphasized that "*Daubert* is a flexible test and no single factor, even testing, is dispositive." *Nease v. Ford Motor Co.*, 848 F.3d 219, 232 (4th Cir. 2017). Trial courts are afforded broad discretion in determining which factors constitute "reasonable measures of reliability in a particular case." *Id.*

Lewis's challenges go to the weight and credibility of Dr. Calandra's opinions—not their admissibility. Accordingly, the Court declines to exclude Dr. Calandra's testimony.[3]

---

[3]     Lewis also moves to exclude any portions of Dr. Calandra's testimony that are not offered to a reasonable degree of medical certainty—for example, statements that Lewis's preexisting factors "may have" contributed to a chronically weak patellar tendon or that "it is possible" the patellar tendon ruptured before the fall. (*See, e.g.*, Calandra Dep. 23:17–22, DE 44-2 at 5; *id.* 26:1–5, DE 44-2 at 6.) Lewis argues that such speculative opinions would not help the jury determine any fact in issue.

This argument fails. Under federal law, even though expert testimony must be provided with "sufficient certainty" to constitute a reliable medical judgment, courts evaluate the testimony as a whole to determine whether the expert's conclusions are ultimately expressed to a reasonable degree of medical certainty. *See Riggins v. SSC Yanceyville Operating Co., LLC*, 800 F. App'x 151, 155 (4th Cir. 2020). Dr. Calandra testified that as to his "opinions in this case," he holds them to a certainty of "75 to 90 percent, somewhere in that." (Calandra Dep. 80:15–19, DE 44-2 at 2.) So, the Court declines to exclude Dr. Calandra's testimony at this time.

14

2.    **Brandon L. Wiggins, P.E.**

Lewis moves to exclude the testimony of Mr. Wiggins, arguing that his opinions on slip-resistance are unreliable and outside his qualifications under *Daubert* and Rule 702 of the Federal Rules of Evidence. (DE 41 at 8.)

(a)    ***Mr. Wiggins's Qualifications***

Lewis contends that Mr. Wiggins is unqualified to offer opinions about the cleaning products used or the effect they would have on the entryway surface. (DE 41 at 9.) At any rate, Mr. Wiggins was retained not to opine on the chemical composition of the cleaning products but to evaluate the store entrance and surrounding areas in relation to code compliance and surface safety. DE 44-7 at 5.)

Mr. Wiggins is a licensed professional engineer in several states, including South Carolina. He holds a Bachelor of Science in Civil Engineering from Clemson University, has been practicing since 1995, and holds certifications such as OSHA 10-Hour Construction, FAA Licensed UAS (Drone) Commercial Pilot, and Certified XL Tribometrist. He is a member of the American Society of Civil Engineers and ASTM International's pedestrian/walkway safety committee. (DE 44-7 (credentials).)

Rule 702 permits an expert to qualify "by knowledge, skill, experience, training, or education." Rule 702, Fed. R. Evid. Courts judge an expert's qualifications liberally under this rule. *See Kopf v. Skyrm*, 993 F.2d 374, 377 (4th Cir. 1993). A challenge based on qualifications alone must show that the expert lacks "satisfactory knowledge, skill, experience, training, or education" in the relevant field. *In re Pella Corp. Architect & Designer Series Windows Mktg., Sales Practices & Prods. Liab. Litig.*, 214 F. Supp. 3d 478, 496 (D.S.C. 2016).

15

Given Mr. Wiggins's extensive engineering credentials and certifications, the Court finds he is qualified to offer opinions on surface conditions, including slip resistance. While Mr. Wiggins concedes he is not an expert on the chemical properties of cleaning agents (*see* Wiggins Dep. 70:18–72:16, DE 44-5 at 4), his opinions do not extend into that domain.

### (b)   *Mr. Wiggins's Reliability*

Next, Lewis contends, among other things, that Mr. Wiggins's opinions are not reliable because he failed to consider how the cleaning product was being used when Lewis fell. (DE 41 at 9.) Lewis argues that Mr. Wiggins's failure lies not in considering and rejecting the effect of the cleaning products based on testing, training, or expertise, but rather in never considering that information at all. As a result, Lewis asserts that Mr. Wiggins's slip-resistance opinion suffers from a fundamental "analytical gap." (*Id.*)

To begin with, Lewis's Complaint asserts that "Defendant John Doe mopped the store entrance and created an unreasonably dangerous condition in the form of a slip hazard." (Compl. ¶¶ 10–11, DE 1-1 at 5.) Circle K contends that when asked in discovery what Lewis believed Circle K did to support the allegations in his complaint, Lewis also described the incident as follows:

> [Circle K] and its employees created an unreasonably dangerous condition in the form of a slip hazard on the premises by spraying water and cleaning the sidewalk outside of the Circle K. [Lewis] encountered the dangerous condition when leaving the Circle K and slipped and fell. [Circle K] and its employee failed to warn [Lewis] of the dangerous condition.

(Pl.'s Answers to Def.'s First Interrogs. ¶ 11, DE 44-8 at 1.) Even so, Mr. Wiggins testified that the concrete in the subject area was "very very rough," had "a lot of disparities," had "a lot of the aggregate showing," and is "a pretty rough surface." (Wiggins Dep. 56:5-12, DE 44-5 at 5.) He also testified that, although he did not perform testing with either of the two possible cleaners used on the date of the incident, he did not know whether they affected slipperiness because, according to the video, several other people walked through the area without incident. (*Id.* 98:11–99:2, DE 44-5 at 6.)

Whether Mr. Wiggins ignored certain facts misses the mark because "questions regarding the factual underpinnings of the expert witness'[s] opinion affect the weight and credibility of the witness'[s] assessment, not its admissibility." *Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 195 (4th Cir. 2017) (alterations adopted and quotation marks omitted); *see also Thomas J. Kline, Inc. v. Lorillard, Inc.*, 878 F.2d 791, 799 (4th Cir. 1989) (noting that "[o]ne knowledgeable about a particular subject need not be precisely informed about all details of the issues raised in order to offer an opinion").

Thus, the Court declines to exclude Mr. Wiggins's testimony or opinions on the entryway's slip resistance. Lewis's motion to exclude the testimony of Dr. Calandra and Mr. Wiggins is denied.


### B.  Circle K's Premises Liability

Circle K contends it is entitled to summary judgment on Lewis's negligence claim, asserting that it did not breach any duty of care to Lewis and, even if a breach

occurred, Lewis's damages are not causally linked to the alleged slip and fall.[4] (DE 39.) Under South Carolina law, to establish a negligence claim, a plaintiff must show: (1) the defendant owed a duty of care; (2) the defendant breached that duty; (3) the breach proximately caused the plaintiff's injuries; and (4) the plaintiff suffered damages. *See Dorrell v. S.C. Dep't of Transp.*, 605 S.E.2d 12 (S.C. 2004). Whether the law recognizes a particular duty is a question of law for the court. *See Jackson v. Swordfish Inv., L.L.C.*, 620 S.E.2d 54, 56 (S.C. 2005).

Under South Carolina premises-liability law, "[a] merchant is not an insurer of the safety of his customer but owes only the duty of exercising ordinary care to keep the premises in reasonably safe condition." *Garvin v. Bi–Lo, Inc.*, 541 S.E.2d 831, 832 (S.C. 2001). Specifically, merchants must "keep the aisles and passageways in a reasonably safe condition." *Moore v. Levitre*, 365 S.E.2d 730, 730 (S.C. 1988). "To recover damages for injuries caused by a dangerous or defective condition on a defendant's premises, a plaintiff 'must show either (1) that the injury was caused by a specific act of the respondent which created the dangerous condition; or (2) that the respondent had actual or constructive knowledge of the dangerous condition and failed to remedy it.'" *Pringle v. SLR, Inc., of Summerton*, 675 S.E.2d 783, 787 (S.C. Ct. App. 2009) (quoting *Anderson v. Racetrac Petro., Inc.*, 371 S.E.2d 530, 531 (S.C. 1988)). When the defendant's own conduct created the condition, the key issue is

---

[4]     Because this matter arises out of an accident that occurred in South Carolina, South Carolina law provides the substantive rules of decision in this diversity-jurisdiction case. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.*, 313 U.S. 487, 496 (1941); *Boone v. Boone*, 345 S.C. 8, 13, 546 S.E.2d 191, 193 (2001) ("Under traditional South Carolina choice of law principles, the substantive law governing a tort action is determined by the *lex loci delicti*, the law of the state in which the injury occurred.").

whether sufficient evidence exists to create a fact question as to whether the condition was hazardous. *See Shain v. Leiserv, Inc.*, 493 S.E.2d 111, 112 (S.C. Ct. App. 1997).

### 1.     Dangerous Conditions

Circle K contends that the store's entryway, which was being cleaned with water and CAF cleaner, did not constitute a dangerous condition. (DE 39 at 5.) Lewis disputes this, not simply because the surface was wet, but because Circle K's employee, Mr. Waples, failed to measure the amount of cleaning materials applied. Mr. Waples testified: "I just grab a scoop of it . . . I was never told an amount." (Waples Dep. 89:17–18, DE 43-3 at 10.) Lewis also relies on his expert, Bryan Durig, who concludes that the improper application of cleaning materials violated building codes and industry standards, creating an unreasonably hazardous condition. (DE 43 at 5–6.)

The Court notes that Lewis has not cited specific record evidence substantiating Durig's expert assertions. Nevertheless, even setting aside this evidentiary gap, and viewing the evidence and all reasonable inferences in Lewis's favor, *Liberty Lobby*, 477 U.S. at 255, Mr. Waples's testimony precludes summary judgment. A reasonable jury could credit Mr. Waples's admission and conclude that the use of an improperly measured amount of CAF cleaner created a dangerous condition at the store's entrance.

### 2.     Open and Obvious

Circle K further argues it is entitled to summary judgment because the condition — a wet entryway actively being cleaned — was open and obvious, and thus it owed no duty to warn. (DE 39 at 8.) In support, Circle K points to Lewis's deposition

testimony acknowledging that he was not paying attention to his surroundings when entering the store. (Lewis Dep. 35:5–9, 39:13–14, DE 39-22; Lewis Dep. 41:6–10, DE 39-23; Lewis Dep. 63:2–6, DE 39-24.)

Under South Carolina law, a property owner "owes no duty to use reasonable care to take precautions against or to warn guests of open and obvious dangers." *Green v. United States*, 105 F. App'x 515, 516 (4th Cir. 2004) (per curiam) (citing *Neil v. Byrum*, 343 S.E.2d 615, 616 (S.C. 1986)). Liability arises only where the owner has superior knowledge of a hidden danger; if the danger is obvious, no such duty exists. *See H.P. Larimore v. Carolina Power & Light*, 531 S.E.2d 535, 538 (S.C. Ct. App. 2000). However, "the open and obvious danger rule has an exception, where the premises owner should reasonably anticipate that invitees may be distracted or will not discover the danger." *Hackworth v. United States*, 366 F. Supp. 2d 326, 330 (D.S.C. 2005) (citing *Callander v. Charleston Doughnut Corp.*, 406 S.E.2d 361, 362–63, 406 S.E.2d 361, 126 (S.C. 1991)).

Lewis contends that the combination of water, cleaning chemicals, and painted surfaces created a condition that would not be apparent to a reasonable person. (Lewis Dep. 60:12–15, DE 43-1 at 6.) Lewis further asserts that even if the condition was open and obvious, Circle K should have anticipated the harm based on the high-traffic nature of the area, where customer distraction was foreseeable. (DE 43 at 8) (citing *Callander*, 406 S.E.2d at 362–63, 406 S.E.2d at 126.) That said, the video evidence shows Lewis entering the store, walking past Mr. Waples—who was cleaning the wet entryway while wearing a visible red Circle K uniform—and exiting

minutes later. The cleaning activity and wet conditions were clearly observable. Furthermore, Lewis himself testified that he was not paying attention. A reasonable jury could not, therefore, find that anything obstructed Lewis's view of Mr. Waples, the wet entryway, or the cleaning in progress. Accordingly, the Court finds no genuine dispute of material fact as to whether the wet entryway constituted an open and obvious hazard.

### 3.     Anticipation of Harm

Lewis correctly notes, however, that the inquiry does not end there. "[T]he open and obvious danger rule has an exception[,]" where the premises owner should reasonably anticipate that invitees may be distracted or otherwise fail to perceive or protect themselves against the danger. *Hackworth*, 366 F. Supp. 2d at 330. Generally, a landowner owes invitees a duty of ordinary care and may be liable for foreseeable injuries despite the obviousness of the danger. *Sides v. Greenville Hosp. Sys.*, 607 S.E.2d 362, 364–65 (S.C. Ct. App. 2004); *Sims v. Giles*, 541 S.E.2d 857, 863 (S.C. Ct. App. 2001); *see also Henderson v. St. Francis Community Hosp.,* 303 S.C. 177, 399 S.E.2d 767 (1990) (reversing grant of JNOV where a hospital had been warned by a contractor that certain trees were undesirable because they caused dangerous accumulation of debris but the hospital did not correct the situation)).

Here, Circle K argues that it had no notice of similar incidents involving customers falling because of entryway cleaning and asserts that Lewis has offered no evidence of such notice. Circle K, therefore, maintains that absent foreseeability, it owed no duty to warn.

Lewis, on the other hand, argues that summary judgment is inappropriate because a reasonable jury could conclude Circle K should have anticipated the risk of harm, given:

- The fall occurred directly in front of the only store entrance;

- The dangerous condition was not a naturally occurring hazard but was affirmatively created by the employee's cleaning activity; and

- Lewis had no clear alternative path to reach his vehicle, as the cleaning was being performed directly outside the entrance.

(DE 43 at 9–10.) While these points highlight potential factual disputes, they fail to demonstrate that Circle K had been warned or otherwise knew that cleaning the entryway posed a specific danger to customers. Without such evidence of foreseeability, Lewis cannot establish that Circle K had a duty to anticipate harm beyond the open-and-obvious nature of the condition. Accordingly, the Court finds no genuine issue of material fact as to whether Circle K should have foreseen the harm, and so, summary judgment is appropriate on this basis for Circle K.

### 4.    Causation[5]

---

[5]     At the Court's direction, the parties submitted supplemental briefing specifically addressing whether expert medical testimony is legally required to establish causation for Lewis's alleged injury—an acute patellar-tendon rupture—under South Carolina law, and whether Lewis's circumstantial and lay testimony is sufficient to create a genuine dispute of material fact where the injury may have multiple potential etiologies. (*See* Text Order, DE 49.) The Court has carefully considered these supplemental submissions (DE 52; DE 53; DE 54) and incorporates their relevant arguments and evidentiary citations into its analysis here.

Circle K also contends it is entitled to summary judgment on causation. While Circle K does "not dispute that [Lewis] suffered an injury and that he fell," Circle K instead contends the record lacks expert medical testimony *linking* Lewis's patellar-tendon rupture—the source of his "severe debilitating injuries" (*see* Compl. ¶ 16, DE 1-1 at 6)—to the allegedly hazardous condition on Circle K's premises. (DE 39 at 10.) The Court agrees.

### (a)  *South Carolina Law Requires Expert Testimony*

In South Carolina, a plaintiff in a negligence action must demonstrate that the defendant's conduct was the proximate cause of the alleged injury. *See Goewey v. United States*, 886 F. Supp. 1268, 1279 (D.S.C. 1995). When the cause of an injury lies outside the common knowledge of laypersons—particularly where the injury may stem from multiple potential etiologies—expert medical testimony is required to establish causation. *Gambrell v. Burleson*, 252 S.C. 98, 107, 165 S.E.2d 622, 626 (1969); *Ellis v. United States*, 484 F. Supp. 4, 11 (D.S.C. 1978); *In re Lipitor Litig.*, 227 F. Supp. 3d 452, 470–72 (D.S.C. 2017). Speculative or conclusory testimony is insufficient in such cases. *Ellis v. Oliver*, 323 S.C. 121, 473 S.E.2d 793, 795 (1996).

### (1)  There Are Multiple Possible Causes of Lewis's Injury

Lewis alleges that he slipped on a wet, painted stripe in Circle K's parking lot, which caused his right foot to roll and his knee to buckle, resulting in an acute patellar-tendon rupture. (DE 53 at 1–2.) Thus, Lewis argues this is a case where lay testimony about the slip is sufficient to meet his evidentiary burden. (DE 43 at 10–

11; *see* DE 53 at 3 ("[e]xpert testimony is not required to prove causation when there is an immediate onset of symptoms that naturally follow from an accident *or lack of any other possible cause*." (emphasis added)).)

But Circle K has developed evidence suggesting that Lewis's precise injury stemmed, at least in part, from Lewis's previous medical history rather than from a slip only. (*See* DE 39 at 11 (gathering evidence and explaining that it "shows that either the [acute patellar] injury *occurred first and caused him to fall, or that he tripped*" (emphasis added)).) Indeed, the evidence indicates that in 2008, Lewis sustained a patellar tendon rupture in the same leg—his right. (*See*, e.g., DE 52 at 1.) Circle K asserts that this prior injury, along with other contributing factors, may have caused either a trip or a spontaneous tendon rupture. (DE 39 at 11.)

Thus, the pertinent inquiry is whether, under South Carolina tort law, expert medical testimony is required in cases of this nature. If so, the further question is whether the evidence presented by Lewis—intended to establish that the rupture of his patellar tendon resulted from the alleged slip or trip—is sufficient to satisfy a prima facie case. (*Id*. at 2–3.) The Court now turns to these questions.

### (2)    Expert Testimony Is Required to Establish Lewis's Patellar-Tendon Rupture Was Caused By Circle K's Allegedly Tortious Conduct

Under South Carolina law, expert medical testimony is required to establish causation in cases of this nature. The South Carolina Supreme Court's decision in *Gambrell v. Burleson* illustrates this point. In that case, the plaintiff, Mr. Gambrell,

was seated in his vehicle with another individual when the defendant collided with his car, propelling it approximately fifteen feet. *Id.* at 102, 165 S.E.2d at 623. Following the accident, Mr. Gambrell sought treatment for pain and, by August 1963, began to report headaches and numbness and soreness on the left side of his face. *Id.* at 103, 165 S.E.2d at 624. His condition progressively deteriorated, and in December 1963, he was diagnosed with malignant nasopharyngioma, a form of cancer. *Id.* at 104, 165 S.E.2d at 624. Mr. Gambrell passed away less than six months later. *Id.*

Mr. Gambrell's estate sued under the South Carolina survivor statute. *Gambrell,* 252 S.C. at 100, 165 S.E.2d at 622. Though acknowledging Mr. Gambrell had the cancer before the collision, the estate claimed that the collision "caused cells on what was then a localized tumor to break off and spread over the body" thus "hastening [Mr.] Gambrell's death and causing pain and suffering and medical expense incident thereto." *Id.* at 100, 165 S.E.2d at 623. Over defense counsel's objection, the trial court permitted expert medical testimony to that effect. *Id.* at 101, 165 S.E.2d at 623. Mr. Gambrell's estate prevailed and, relevant here, the jury awarded damages for the pain and suffering associated with the cancer. *Id.*

The South Carolina Supreme Court reversed the lower court's decision and ordered a new trial. *Id.* at 108, 165 S.E.2d at 626. Because the estate of Mr. Gambrell had presented both "circumstantial evidence plus [ ] medical evidence," *Gambrell*, 252 S.C. at 105, 165 S.E.2d at 625, the Court was required to determine whether such evidence was, under the facts of the case, "sufficient to create a factual issue of causation[.]" *Id.* The Court answered that question in the negative, applying a two-

step analysis. First, it identified two conceptual "poles" governing the evidentiary requirements in personal injury cases: those in which expert medical testimony is not necessary, and those in which such testimony is "rather obviously indispensable to recovery." *Id.* at 105–06, 165 S.E.2d at 625.

Determining that Mr. Gambrell's case fell between the two evidentiary poles, the Court proceeded to analyze the specific facts to assess what type of evidence was legally required. After evaluating the timing of Mr. Gambrell's symptoms, his projected and actual life expectancy, and other relevant circumstances, the Court concluded that "the non-expert testimony does not so immediately and directly or naturally and probably connect the collision with the cancer as to make proof legally sufficient." *Id.* at 107, 165 S.E.2d at 626. Central to this determination was the medical testimony indicating that Mr. Gambrell's "dormant cancer [as] described by the doctor [w]as almost 100% [f]atal"—meaning that he was not, in fact, "truly in good health prior to the accident," and that the cancer "developed as medical science expected." *Id.* at 105, 165 S.E.2d at 625.

This case is analogous to—and governed by—the South Carolina Supreme Court's decision in *Gambrell*. As in *Gambrell*, Lewis had a preexisting condition prior to the alleged traumatic event: a prior patellar tendon rupture in the same leg. (*See* Butler Dep. 10:7–11:14, DE 52-1 at 2.) Also similar to *Gambrell*, expert testimony in the present case indicates that Lewis's current injury may have resulted from his preexisting condition—specifically, his history of bilateral patellar tendon ruptures

26

and significant weight gain, both of which are recognized risk factors for recurrence. (*See id.* 25:3–16, DE 52-1 at 4; Evans Dep. 40:15–41:11, DE 52-5 at 4.)

Further, as in *Gambrell*, Lewis has presented both lay and expert testimony in support of his theory of causation. (*See* DE 43 at 12 (referencing the testimony of Lewis and Mr. Waples).) Given Lewis's medical history, the timing and nature of the alleged injury, and the biomechanical considerations involved, the Court concludes that expert medical testimony is necessary to establish causation.[6]

This conclusion is reinforced by the consensus among the experts in this case, all of whom acknowledge that Lewis's relevant medical history bears directly on the injury he now claims. (*See* generally DE 52 at 2–3 (summarizing the opinions of all three medical experts).)

### (b)     *Lewis's Expert Testimony Is Insufficient to Establish That His Patellar-Tendon Rupture Was Caused By Circle K's Allegedly Tortious Conduct*

Lewis has not satisfied his burden to present expert medical testimony establishing his theory that a slip caused the patellar tendon rupture. Although

---

[6]     *Gambrell* is merely emblematic of the general South Carolina rule for determining whether expert testimony is required. *See, e.g.*, *Roscoe v. Grubb*, 237 S.C. 590, 596, 118 S.E.2d 337, 340 (1961) (automobile-accident case noting that for lay testimony on causation to be sufficient, "consideration is to be given to the fact that the physical injury *immediately, or promptly, followed the accident*" but cautioning that this "is not to say that a finding of causation may rest solely upon the illogic of post hoc, ergo propeter hoc[ ]" and requiring "such [a] *natural and obvious relationship between the facts of the accident and the subsequent injury* [exists] as to render consonant to common sense and reason the inference that the injury not only followed the accident but also resulted from it"); *Miller v. Atl. Bottling Corp.*, 259 S.C. 278, 282, 191 S.E.2d 518, 520 (1972) (product-liability case distinguishing cases where lay testimony sufficient where "the sequence of events was *too remote* upon which to base a finding of causal connection" and where "illness *could as reasonably have been attributed to an act for which defendant was not liable as to one for which he was liable*").

27

Lewis relies on the testimony of Dr. Evans, Dr. Evans did not offer an affirmative opinion—within a reasonable degree of medical certainty—that the rupture was caused by a slip.[7] Instead, Dr. Evans testified generally that such injuries typically result from acute events involving a forced extension of the leg against a fixed flexion. (*See* Evans Dep. 11:14–21, DE 43-5 at 3–6.) However, this biomechanical explanation is consistent with, and not meaningfully distinct from, the descriptions provided by both Dr. Evans and Circle K's experts. (See, e.g., DE 52 at 2; DE 53 at 6–7 (summarizing expert testimony).)

---

[7]    Whether the "reasonable degree of medical certainty" requirement is viewed through the lens of substantive South Carolina tort law or under Rule 702 of the Federal Rules of Evidence, Lewis's proffered expert testimony fails to meet the applicable standard under either framework.

Under federal law, an expert must opine that the alleged breach of the standard of care "more probably than not" caused the plaintiff's injury, and must express that opinion "to a reasonable degree of medical certainty." *Riggins*, 800 F. App'x at 158. Similarly, under South Carolina law, "[w]here one relies upon medical testimony alone to show a causal connection between an injury and a subsequent condition, . . . it is not sufficient that the malady in question 'possibly,' 'could have,' or 'might have' resulted from the injury." *Gambrell*, 252 S.C. at 101, 165 S.E.2d at 623.

As discussed above, this is a case in which expert medical testimony is necessary to establish causation. Yet, Lewis's expert has not directly addressed whether the rupture of the patellar tendon was caused by the alleged slip, nor has he expressed such an opinion to the requisite degree of medical certainty.

No party has identified a conflict between South Carolina law and federal evidentiary standards on this issue, nor does the Court discern one. *See In re C.R. Bard, Inc.*, 810 F.3d 913, 919 n.1 (4th Cir. 2016) (noting that a federal court sitting in diversity must first assess whether a conflict exists between federal and state law). Indeed, district courts have routinely harmonized the two. *See*, e.g., *Roop v. Desousa*, 660 F. Supp. 3d 477, 505 (E.D. Va. 2023) (holding that Virginia causation law is substantive and applying it consistently with Rule 702).

Accordingly, the Court concludes that Lewis's evidence fails to satisfy his burden under either federal evidentiary standards or substantive South Carolina tort law.

Further, the testimony Lewis cites in support of his slip-causation theory—namely, Dr. Evans's comments concerning mechanisms such as skiing or unexpected knee bending—was made in response to a compound question.[8] Even construing Dr. Evans's ambiguous response in the light most favorable to Lewis, the testimony fails to establish a direct causal connection between the alleged slip and the specific biomechanical forces required to rupture the patellar tendon. At most, Dr. Evans characterized the injury as "acute."[9] But as Circle K correctly notes, an "acute" event does not necessarily equate to a slip; it is equally consistent with a trip or another form of sudden stress. (See, e.g., DE 54 at 2.)

---

[8]    Specifically:

| PLAINTIFF'S COUNSEL: | And would a person who maybe unexpectedly slips *or* their foot turns one way *or* their knee turns another way, is that a common cause of a ruptured patellar tendon? |
| DEFENDANT'S COUNSEL: | Objection, leading. |
| DR. EVANS: | Yes, that would be a common mechanism, something where your knee bends quickly or unexpectedly. We will see it in, like, skiing injuries or something like that, if somebody's ski gets caught and the foot turns one way and the leg goes the other way, that type of picture of why your patellar tendon might rupture. |

(Evans Dep. 12:8–20, DE 43-5 at 4 (emphases added).)

[9]    Specifically:

| PLAINTIFF'S COUNSEL: | And to -- or is it your opinion that Mr. Lewis suffered an acute injury to his right patellar tendon? |
| DR. EVANS: | Yes. |
| PLAINTIFF'S COUNSEL: | And is that opinion to a reasonable degree of medical probability? |
| DR. EVANS: | Yes. |

(Evans Dep. 14:15–21, DE 43-5 at 6.)

Indeed, Circle K's expert, Dr. Calandra, opined unequivocally that a slip is not a recognized biomechanical cause of patellar tendon rupture. He further testified that Lewis's injury could have resulted either spontaneously or from internal stresses unrelated to any slip. (See DE 52 at 3; DE 54 at 2–3.) Significantly, none of the medical experts—Dr. Evans, Dr. Calandra, or Dr. Butler—offered an opinion, to a reasonable degree of medical certainty, that a slip, as opposed to a trip or spontaneous rupture, was the cause of Lewis's injury.

To overcome this evidentiary deficiency, Lewis relies on lay testimony from both himself and Circle K employee Mr. Waples, who purportedly observed indications of a slip on the painted stripe. (DE 53 at 5.) But even assuming that this testimony establishes that a slip occurred, that alone is insufficient under South Carolina law in cases of this nature—expert medical testimony is required to establish causation.[10] While lay testimony may be relevant to demonstrate the condition of the premises or the occurrence of a slip and any ordinary injuries resulting therefrom, *see Roscoe v. Mullins Lumber Co.*, 237 S.C. 588, 596, 118 S.E.2d 340, 344 (1961), it cannot substitute for expert medical evidence where such evidence is legally necessary to prove causation. *See Gambrell*, 252 S.C. at 107, 165 S.E.2d at 626; *Goewey v. United States*, 886 F. Supp. At 1279.

In sum, expert medical testimony is required to affirmatively connect the alleged slip to the patellar tendon rupture. Even when the record is viewed in the

---

[10]     So, while Circle K disputes "the exact mechanism of the fall," namely, whether Lewis slipped *or* tripped on the painted parking-lot stripe (*see* DE 54 at 1), Lewis's failure to proffer sufficient evidence is dispositive as to his claimed injury and the Court need go no further.

light most favorable to Lewis, it does not contain competent expert testimony establishing that the alleged hazardous condition—specifically, the slick, painted stripe—was the proximate cause of the injury.

Accordingly, Lewis has failed to present evidence sufficient to create a genuine dispute of material fact on the issue of causation. Summary judgment in favor of Circle K is therefore appropriate.[11]

## C.    Spoliation

Lewis argues that Circle K repainted the parking lot stripes at the incident site before Lewis's expert could inspect and test the surface, thereby depriving him of critical evidence about the slip resistance of the area where the fall occurred. Lewis seeks severe sanctions, including striking Circle K's expert testimony, issuing an adverse inference jury instruction, and granting a directed verdict on Lewis's negligence claim. (DE 40 at 7.) Circle K opposes the motion, contending that no spoliation occurred, warranting sanctions. (DE 42.) To obtain spoliation sanctions, the moving party must show that:

> (1) the opposing party had a duty to preserve relevant evidence;
>
> (2) the opposing party engaged in willful conduct that resulted in the destruction of the evidence; and
>
> (3) the destruction occurred at a time when the party knew, or reasonably should have known, that the evidence was relevant to litigation.

*See Blue Sky Travel & Tours, LLC*, 606 F. App'x at 697–98; *Turner*, 736 F.3d at 282.

---

[11]     Given the Court's ruling, the Court declines to reach Circle K's claim for summary judgment on Lewis's punitive damages claim.

The Court has inherent authority to impose sanctions for spoliation, but that power is limited to addressing conduct that abuses the judicial process. *Silvestri*, 271 F.3d at 590. Severe sanctions—such as striking defenses, adverse inference instructions, or directed verdicts—are appropriate only when the spoliating conduct is egregious and causes such extreme prejudice that it irreparably impairs the non-spoliating party's ability to present its case. *Id.* at 593.

Lewis argues that Circle K repainted the parking lot stripes before his expert could conduct slip-resistance testing, thereby willfully destroying material evidence. However, the record does not support a finding of bad faith or willful misconduct. The repainting was part of routine maintenance, and Lewis has not presented evidence that Circle K acted with the intent to destroy evidence or hinder the litigation. *See Blue Sky Travel*, 606 F. App'x at 698 (sanctions require willful or deliberate destruction, not mere negligence or routine conduct).

Moreover, even if the Court assumes a preservation duty existed, Lewis has not shown the requisite prejudice. As discussed in the Court's rulings on Circle K's summary judgment motion, Lewis has failed to satisfy his independent burden of proving causation through expert testimony, among other things. Under South Carolina law, causation in cases involving complex medical injury must be established by expert opinion. *See Gambrell*, 252 S.C. 98, 101, 165 S.E.2d at 623. And under both South Carolina and federal law, it generally must be expressed to a reasonable degree of medical certainty. *See Riggins*, 800 F. App'x at 158; *Goewey*, 886 F. Supp. at 1279. Here, Lewis's expert, Dr. Evans, confirmed only that the patellar-

tendon rupture was acute but did not testify, to the required level of certainty, that the injury was caused by the alleged slip on the painted stripe. As a result, Lewis's claim fails on causation grounds, independent of any issues about the paint-stripe testing.

Because spoliation sanctions are designed to cure litigation prejudice—not to punish in the abstract—the lack of material prejudice here eliminates the foundation for any sanction. *See Silvestri*, 271 F.3d at 593 (noting that sanctions must be proportionate to both culpability and prejudice). Even if the original surface testing were available, Lewis would remain unable to meet the causation burden necessary to survive summary judgment or prevail at trial. Accordingly, the Court finds that the alleged spoliation does not affect the outcome and does not warrant the severe remedies Lewis seeks.

## IV.   CONCLUSION

In summary, Plaintiff Jonathan Lewis has failed to establish the necessary elements of his negligence claim under South Carolina law, particularly on the essential issue of causation, which requires expert testimony to a reasonable degree of medical certainty. Furthermore, because Lewis has not shown that the alleged spoliation caused material prejudice affecting the outcome of this case, no sanctions are warranted. And so, for all these reasons, the Court

(1) GRANTS Defendant Circle K's Motion for Summary Judgment (DE 39) as to all claims,

(2) DENIES Plaintiff Jonathan Lewis's Motion for Spoliation Sanctions (DE 40), and

(3) DENIES Plaintiff's Motion to Exclude Defendant's Experts Dr. Joseph Calandra and Brandon Wiggins (DE 41).

Accordingly, judgment shall be entered for Defendant Circle K, and this action is DISMISSED WITH PREJUDICE.

**IT IS SO ORDERED.**

Joseph Dawson, III
United States District Judge

Florence, South Carolina
August 1, 2025