IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Jonathan Lewis,<br><br>Plaintiff,<br><br>vs.<br><br>Circle K Stores, Inc., and John Doe,<br><br>Defendants. | Case No.: 4:23-cv-1720-JD<br><br>**MEMORANDUM ORDER AND OPINION** |

This matter is before the Court on Plaintiff Jonathan Lewis's Motion for Sanctions for Spoliation (DE 40). Defendant Circle K Stores, Inc. ("Circle K") filed a response (DE 42), and Lewis filed a reply (DE 45). The Court previously denied the motion in the same order that granted summary judgment to Circle K. (DE 55.) On appeal, the Fourth Circuit reversed the summary judgment ruling, vacated the spoliation ruling, and remanded, directing this Court to take "particular care" in applying *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583 (4th Cir. 2001), and *Hodge v. Wal-Mart Stores, Inc.*, 360 F.3d 446 (4th Cir. 2004). *Lewis v. Circle K Stores Inc.*, 175 F.4th 520, 528 (4th Cir. 2026). For the reasons below, the Court GRANTS IN PART and DENIES IN PART Lewis's motion.

## I. BACKGROUND

### A. Factual Background

Lewis visited a Circle K store near Myrtle Beach, South Carolina, on October 19, 2022. While Lewis was inside, a Circle K employee cleaned an area near the entrance using water and a powdered concrete cleaner. Lewis alleges that, as he

exited, he stepped onto a wet painted white stripe, began to slip, and suffered a patellar-tendon rupture. He contends that Circle K created an unreasonably slippery condition and failed to provide an adequate warning. *See Lewis*, 175 F.4th at 523–24.

The condition of the painted stripe became relevant to the parties' expert investigations. Lewis retained Bryan R. Durig, Ph.D., P.E., to inspect the site and evaluate, among other things, the coefficient of friction of the painted surface. Circle K's expert, Brandon Lide Wiggins, P.E., also addressed the area's slip-resistance characteristics. On September 22, 2023, before Durig performed his site inspection, a third-party contractor retained by Circle K repainted the parking-lot stripes. Circle K had used the same vendor to restripe the lot on July 12, 2021, and June 27, 2022. (DE 42 at 1; DE 42-1; DE 42-2.) Durig inspected the site on October 16, 2023, after the September 2023 repainting.

The timing is significant. By August 2023, Circle K knew that Lewis sought to inspect the parking lot. *See Lewis*, 175 F.4th at 524. On September 13, 2023—nine days before the restriping—Lewis's counsel advised defense counsel that Lewis intended to conduct a site inspection with an expert and that the inspection would include "[p]hotos, potentially COF testing and possibly taking a paint sample in the area of the fall to analyze for additive." (DE 45-2; *see also* DE 45 at 5.) The Fourth Circuit observed that because the expert arrived only after Circle K had the stripes repainted, "he was unable to take appropriate coefficient-of-friction measurements." *Lewis*, 175 F.4th at 524.

**B. Procedural Background**

Lewis filed this action in the Horry County Court of Common Pleas on November 1, 2022. (DE 1-1.) Circle K was served on December 28, 2022, answered in state court, and later removed the action to this Court. (DE 1; DE 1-2; DE 1-3.) On September 16, 2024, Circle K moved for summary judgment (DE 39), and Lewis filed the present spoliation motion the same day (DE 40). Lewis requested three principal sanctions: a liability-determining ruling in his favor; exclusion of Wiggins's opinions to the extent they rely on the absence of coefficient-of-friction testing; and an instruction permitting the jury to infer that pre-restriping testing would have been unfavorable to Circle K. (DE 40 at 7.)

The Court granted summary judgment to Circle K and denied the spoliation motion on the merits. (DE 55.) The prior order reasoned, among other things, that the repainting occurred during routine maintenance, that the record did not establish bad faith or willful misconduct, and that Lewis had not demonstrated material prejudice in light of the Court's then-existing causation ruling. The Fourth Circuit reversed the summary-judgment ruling, vacated the spoliation determination, and remanded. *See Lewis*, 175 F.4th at 528. The spoliation motion is, therefore, before the Court again.

Circle K has also filed a Motion in Limine seeking to exclude trial evidence concerning the restriping. (DE 67.) Lewis stipulates that he will not offer the restriping as substantive proof of negligence but seeks to use it for impeachment and other permissible purposes, including to respond if Wiggins relies on the absence of

pre-restriping testing. (DE 68 at 1–3.) Circle K's reply does not object to use of the restriping for proper impeachment or other Rule 407 purposes but asks the Court to prevent Lewis from suggesting that Circle K intentionally hindered his ability to gather evidence and to permit Wiggins to testify that there is no evidence of slipperiness. (DE 69 at 1–2.) The Court resolves the spoliation motion here; the Rule 403 and Rule 407 trial-management issues presented by DE 67 will be addressed separately.

## II. LEGAL STANDARD

Spoliation is "the destruction or material alteration of evidence or . . . the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Silvestri*, 271 F.3d at 590. The authority to impose sanctions for spoliation derives from the Court's inherent power to control the judicial process, but that authority is limited to measures necessary to redress conduct that abuses the judicial process. *Id.* A district court has broad discretion in fashioning an appropriate response, and the "sanction should be molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine." *Id.*

*Silvestri* requires "some degree of fault" before sanctions may be imposed and recognizes a range of responses designed both to level the evidentiary playing field and to sanction improper conduct. 271 F.3d at 590 (quoting *Vodusek*, 71 F.3d at 156). For an adverse inference based on the destruction or loss of evidence, however, negligence alone does not suffice; the party must have known the evidence was relevant and willfully engaged in conduct causing its loss or destruction. *Hodge*, 360

F.3d at 450; *Turner v. United States*, 736 F.3d 274, 282 (4th Cir. 2013); *Vodusek*, 71 F.3d at 156. Bad faith is sufficient but not essential. *Vodusek*, 71 F.3d at 156. *Buckley v. Mukasey* confirms that conduct may be intentional, willful, or deliberate even when not undertaken in bad faith. 538 F.3d 306, 323 (4th Cir. 2008). Because the Court finds willful alteration here, it need not decide whether a lesser sanction could rest on merely negligent conduct.

The sanction selected must account for both culpability and prejudice. *Silvestri*, 271 F.3d at 590, 593. The harshest sanctions are reserved for correspondingly serious circumstances. A dismissal or equivalent case-dispositive sanction is appropriate only where the spoliator's conduct is so egregious as to amount to forfeiture or the resulting prejudice is so severe that it substantially deprives the opposing party of the ability to litigate the claim. *Id.* at 593. Lesser sanctions should be tailored to cure the identified prejudice and restore, so far as possible, the evidentiary balance disrupted by the loss. *See id.* at 590.

## III. DISCUSSION

### A. Duty to Preserve

Lewis argues that Circle K's preservation duty arose no later than January 2023 and that the duty became concrete once counsel sought a site inspection; his reply emphasizes the September 13, 2023, email identifying potential coefficient-of-friction testing and paint sampling. (DE 40 at 2–4; DE 45 at 2, 5.) Circle K responds that the lot was restriped annually as routine maintenance, that Lewis did not seek

an inspection until nearly a year after the fall, and that he never specifically requested preservation of the paint. (DE 42 at 4–5, 7.)

The Court need not determine the earliest possible date on which Circle K's preservation duty encompassed the painted stripe. By September 13, 2023, the duty was unmistakable. Litigation had been pending for months, and Lewis had specifically advised defense counsel that his retained expert intended to inspect the fall location, potentially perform coefficient-of-friction testing, and possibly obtain a paint sample to analyze for additives. (DE 45-2; DE 45 at 5.) The physical characteristics of the stripe were, therefore, not merely abstractly relevant to a premises liability claim. Rather, through counsel, Circle K had actual notice that this specific physical evidence would be examined and potentially sampled. Circle K's routine-maintenance evidence bears on culpability, particularly bad faith, but it does not eliminate the preservation duty after such specific notice. The Fourth Circuit itself noted Circle K's position that the repainting was routine, prescheduled maintenance and remodeling. *See Lewis*, 175 F.4th at 524. *Silvestri* makes clear that the duty extends to material evidence a party reasonably should know may be relevant to litigation. 271 F.3d at 591. At that point, Circle K had to take reasonable steps to preserve the stripe long enough to allow the disclosed inspection; at minimum, it should not have allowed the scheduled repainting to proceed without notifying Lewis.

### B. Willful Alteration, but No Bad Faith

Lewis contends that repainting the stripe after specific notice of the intended testing was willful because the alteration itself was deliberate; he further argues that bad faith is unnecessary. (DE 40 at 3–5; DE 45 at 4–5.) Circle K responds that the work was routine and prescheduled and that it lacked any intent to deprive Lewis of evidence, relying on that ordinary-course context to deny both willfulness and bad faith. (DE 42 at 5–7.)

The September 22, 2023, repainting was not an accidental loss, natural deterioration, or automatic overwriting of information. Circle K had a third-party vendor restripe the lot nine days after defense counsel received specific notice of the planned expert inspection and possible coefficient-of-friction testing and paint sampling. The physical alteration itself was deliberate. The Court credits Circle K's evidence that the restriping occurred as part of a recurring maintenance practice. That evidence weighs against a finding that Circle K caused the repainting for the purpose of concealing evidence or defeating Lewis's lawsuit. But ordinary-course maintenance does not transform an intentional alteration into an inadvertent one once the party, through counsel, has actual notice that the physical evidence is relevant and about to be inspected. As *Vodusek* and *Buckley* make clear, deliberate destruction or alteration may constitute willful spoliation even absent bad faith. *See Vodusek*, 71 F.3d at 156–57; *see also Buckley*, 538 F.3d at 323.

The Court, therefore, finds that Circle K acted willfully in the spoliation sense: while under a duty to preserve and with knowledge of the evidence's relevance, it

deliberately allowed the painted stripe to be materially altered before the disclosed inspection. The Court does not find, however, that Circle K acted in bad faith, with an intent to deprive Lewis of evidence, or as part of a concealment effort.

**C. Relevance and Resulting Prejudice**

Lewis argues that the pre-restriping surface was material because the repainting prevented meaningful coefficient-of-friction testing of the original paint application. Lewis points to Wiggins's own testimony that post-repainting testing was "questionable" and to Circle K's reliance on the absence of a pre-restriping slip-resistance measurement. (DE 45 at 3–4; DE 68 at 2.) Circle K responds that fresh paint made the area more slippery and, therefore, made the later testing more favorable to Lewis, and that a test performed nearly a year after the fall could not have replicated the accident-day condition in any event. (DE 42 at 4–5; DE 67 at 2.)

The Court agrees with Circle K only in part. An October 2023 test of the unrepainted stripe would not have yielded an exact measurement of the coefficient of friction on October 19, 2022. Weather, traffic, cleaning, wear, and the passage of time necessarily affect an outdoor surface. But that limitation does not render the lost evidence immaterial.

The repainting removed the opportunity to inspect and test the same paint application and pre-restriping physical surface that remained before September 22, 2023. The expert testimony does not establish that the effect of fresh paint is uniform or that later testing could reliably recreate the lost condition. Durig testified that the coefficient of friction may vary depending on the paint, whether abrasive material is

present, the manner and thickness of application, polishing, and wear. (Durig Dep. 18:20–20:24, DE 42-5 at 1–2.) Wiggins likewise acknowledged that testing after repainting is "questionable because you're not testing the surface as it was at the time." (Wiggins Dep. 46:13–21, DE 68-1 at 2.) Consistent with that record, the Fourth Circuit observed that the repainting left Durig unable to take appropriate coefficient-of-friction measurements. *See Lewis*, 175 F.4th at 524.

The prejudice is, therefore, real but limited. Circle K did not deprive Lewis of the ability to try his case. Lewis retains eyewitness and circumstantial evidence, photographs, expert testimony subject to the Federal Rules of Evidence, and the other proof developed in discovery. The lost opportunity concerns a discrete category of physical testing and sampling. That degree of prejudice calls for a focused evidentiary remedy rather than a case-dispositive sanction.

**D. Appropriate Sanction**

Lewis asks the Court to enter a liability-determining ruling, strike Wiggins's opinions to the extent they rely on the absence of coefficient-of-friction testing, and give a permissive adverse-inference instruction. (DE 40 at 7.) Circle K argues that sanctions are unwarranted and specifically maintains that Wiggins should be permitted to testify that there is no evidence of slipperiness because Durig could have returned to the site later. (DE 42 at 6–8; DE 69 at 1–2.) The liability-determining request is disproportionate. Circle K's conduct was willful in the sense described above, but the record does not establish bad faith, and the lost evidence has not substantially deprived Lewis of the ability to present his negligence claim. *See*

*Silvestri*, 271 F.3d at 593. The Court, therefore, declines to determine liability as a sanction.

The Court likewise declines to give a formal adverse-inference instruction. Although such an inference can be permissible when a party knew evidence was relevant and willfully caused its loss, *Vodusek*, 71 F.3d at 156, the circumstances here do not require that additional sanction. Circle K's recurring maintenance practice weighs against bad faith; almost a year had elapsed between the accident and the proposed inspection; and substantial other evidence remains available. A formal adverse inference would risk assigning the lost evidence a value that cannot now be known. A narrower remedy will adequately cure the demonstrated prejudice.

The appropriate remedy is targeted to the evidentiary gap created by the repainting. Wiggins may testify concerning the scientific limitations of the testing that was performed, the effects of paint age, wear, composition, application, and additives, and any other opinions otherwise admissible under the Federal Rules of Evidence. He may not, however, rely on the absence of a coefficient-of-friction measurement of the pre-restriping surface as affirmative evidence that the stripe was not unreasonably slippery or that Lewis's theory lacks scientific support. That limitation directly addresses the testimony identified in the parties' motion-in-limine briefing: Wiggins stated, "My opinion statement is that you don't have a measurement showing the surface was slippery." (DE 68 at 2 (quoting Wiggins Dep. 49:18–20).) Circle K may not obtain an evidentiary advantage from the absence of the very category of testing that its alteration materially impaired.

For the same remedial purpose, Lewis may introduce evidence that Circle K repainted the incident stripe before Durig's scheduled inspection to explain why no pre-restriping coefficient-of-friction measurement or paint sample exists and to rebut or impeach testimony suggesting that Lewis simply failed to obtain such evidence. This ruling does not permit Lewis to argue that the September 2023 restriping itself proves that Circle K was negligent in causing the October 2022 fall. Nor may Lewis characterize the repainting as a cover-up, concealment effort, or act undertaken in bad faith, because the Court makes no such finding. The precise Rule 403 and Rule 407 boundaries governing presentation of this evidence at trial will be addressed in the Court's separate ruling on DE 67.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Sanctions for Spoliation (DE 40) is GRANTED IN PART and DENIED IN PART. The Court FINDS that Circle K had a duty to preserve the painted stripe no later than September 13, 2023. The Court also finds that Circle K willfully altered relevant physical evidence when the stripe was repainted on September 22, 2023; and that the alteration caused limited but material prejudice to Lewis's ability to inspect and test the pre-restriping surface. The Court does not find bad faith or an intent to deprive Lewis of evidence.

As a remedy, Wiggins shall not rely on the absence of a coefficient-of-friction measurement of the pre-restriping surface as affirmative evidence that the stripe was not unreasonably slippery or that Lewis's theory lacks scientific support. Lewis may introduce evidence of the restriping for the limited remedial purposes described

above. The Court DENIES Lewis's request for a liability-determining sanction and DENIES his request for a formal adverse-inference instruction.

Defendant's Motion in Limine (DE 67) remains pending and will be resolved by separate order consistent with this ruling.

**IT IS SO ORDERED.**

Joseph Dawson, III
United States District Judge

Florence, South Carolina
October 14, 2026